UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

GUY M. VINE,

                     Plaintiff,

                  v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,[1]

                   Defendant.
_____

**REPORT AND
RECOMMENDATION**

12-CV-379
(LEK/VEB)

## I. INTRODUCTION

In August of 2008, Plaintiff Guy Vine applied for Supplemental Security Income ("SSI") benefits and disability insurance benefits ("DIB") under the Social Security Act. Plaintiff alleges that he has been unable to work since April of 2004 due to various impairments. The Commissioner of Social Security denied Plaintiff's applications.

Plaintiff, by and through his attorneys, Amdursky, Pelky, Fennell and Wallen, P.C, Gregory R. Gilbert, of counsel, commenced this action seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On March 22, 2013, the Honorable Gary L. Sharpe, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 11).

---

[1]On February 14, 2013, Carolyn W. Colvin took office as Acting Social Security Commissioner. The Clerk of the Court is directed to substitute Acting Commissioner Colvin as the named defendant in this matter pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure

## II. BACKGROUND

The relevant procedural history may be summarized as follows:

On August 28, 2008, Plaintiff applied for SSI benefits and DIB under the Social Security Act, alleging that he had been unable to work since April 15, 2004. (T at 88, 89).[2] The applications were denied initially and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held in Syracuse, New York, on March 10, 2010, before ALJ Bruce S. Fein. (T at 26). Plaintiff appeared with an attorney and testified. (T at 32-62).

On July 14, 2010, ALJ Fein issued a written decision finding that Plaintiff was not disabled within the meaning of the Social Security Act and denying his claim for benefits. (T at 8-25). The ALJ's decision became the Commissioner's final decision on January 27, 2012, when the Social Security Administration Appeals Council denied Plaintiff's request for review. (T at 3-7).

Plaintiff, by and through counsel, timely commenced this action by filing a Complaint on March 1, 2012. (Docket No. 1). The Commissioner interposed an Answer on July 9, 2012. (Docket No. 6). Plaintiff filed a supporting Brief on August 23, 2012. (Docket No. 9). The Commissioner filed a Brief in opposition on October 2, 2012. (Docket No. 10).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[3]

---

[2]Citations to "T" refer to the Administrative Transcript. (Docket No. 7).

[3]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

For the reasons below, it is recommended that Plaintiff's motion be denied, the Commissioner's motion be granted, and this case be dismissed.

## II. DISCUSSION

**A.    Legal Standard**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

The Commissioner has established a five-step sequential evaluation process to

determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.[4]

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could

---

[4]This five-step process is detailed as follows:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.      Analysis**

**1.      Commissioner's Decision**

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 15, 2004 (the alleged onset date) and met the insured status requirements of the Social Security Act through March 31, 2005. (T at 13). The ALJ found that Plaintiff had the following impairments considered "severe" under the Social Security Regulations: degenerative spondylosis, status post left ankle/end leg fracture, and chronic obstructive pulmonary disease ("COPD"). (T at 13-15).

The ALJ determined that Plaintiff's medically determinable impairments did not meet or equal one of the impairments listed in Appendix I of the Regulations (the "Listings"). (T at 15).

The ALJ concluded that Plaintiff retained the residual functional capacity to lift/carry 20 pound occasionally and 10 pounds frequently, stand/walk for about 2 hours in an 8-hour workday, and sit for about 6 hours in an 8-hour workday. He found that Plaintiff could push and/or pull using all extremities consistent with light work; occasionally stoop, kneel, crouch, and crawl; and that Plaintiff should avoid extreme cold and heat, as well as fumes, odors, dust, gases, and poor ventilation. (T at 15-21).

The ALJ found that Plaintiff could not perform his past relevant work as a millwright carpenter. However, considering Plaintiff's age (39 on the alleged onset date), education (high school), and the RFC (at least sedentary work), the ALJ determined that there are

jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 21-22).

Accordingly, the ALJ concluded that Plaintiff had not been under a disability, as that term is defined under the Act, from the alleged onset date (April 15, 2004) through the date of the ALJ's decision (July 14, 2010), and was therefore not entitled to benefits. (T at 22). As noted above, the ALJ's decision became the Commissioner's final decision on January 27, 2012, when the Social Security Administration Appeals Council denied Plaintiff's request for review. (T at 3-7).

### 2.      Plaintiff's Claims

Plaintiff argues that the Commissioner's decision should be reversed. He offers four (4) principal arguments. First, Plaintiff argues that the ALJ should have concluded that his obesity and the "fissuring" condition of his hand and feet were severe impairments. Second, Plaintiff contends that the ALJ did not properly assess the opinion of his treating physician. Third, Plaintiff challenges the ALJ's credibility determination. Fourth, Plaintiff contends that the ALJ's step five determination was flawed. Each argument will be addressed in turn.

### a.      Severity of Impairments

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c). The following are examples of "basic work activities": "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling ... seeing, hearing, and speaking ... [u]nderstanding,

carrying out, and remembering simple instructions ... [u]se of judgment ... [r]esponding appropriately to supervision, co-workers and usual work situations." <u>Gibbs v. Astrue</u>, No. 07-Civ-10563, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008); 20 C.F.R. § 404.1521(b)(l)-(5).

The claimant bears the burden of presenting evidence establishing severity. <u>Miller v. Comm'r of Social Sec.</u>, No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); <u>see</u> <u>also</u> 20 C.F.R. § 404.1512(a). Although the Second Circuit has held that this step is limited to "screen[ing] out de minimis claims," <u>Dixon v. Shalala</u>, 54 F.3d 1019, 1030 (2d Cir.1995), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." <u>Coleman v. Shalala</u>, 895 F. Supp. 50, 53 (S.D.N.Y.1995). Indeed, a "finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" <u>Rosario v. Apfel</u>, No. 97-CV-5759, 1999 WL 294727 at *5 (E.D.N.Y. March 19,1999) (quoting <u>Bowen v. Yuckert</u>, 482 U.S. 137, 154 n. 12 (1987)).

### i.    Obesity

Although "[o]besity is not in and of itself a disability; . . . [it] may be considered severe-and thus medically equal to a listed disability-if alone or in combination with another medically determinable ... impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities." <u>Cruz v. Barnhart</u>, No. 04-CV-9011 (GWG), 2006 WL 1228581, at *10 (S.D.N.Y. May 8, 2006); <u>see</u> <u>also</u> SSR 02-1p; 20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.00(Q) (instructing adjudicators to assess carefully the combined effects of obesity and musculoskeletal ailments during Steps 2 and 4 because "[o]besity is a

medically determinable impairment that is often associated with disturbance of the musculoskeletal system ... The combined effects of obesity with musculoskeletal impairments can be greater than the effect of each ... considered separately."). The Social Security Administration has said that the ALJ is obligated to "explain how [he] reached [his] conclusions on whether obesity caused any physical or mental limitations." S.S.R. 02-1 p, 2000 WL 628049, at *7.

Plaintiff is morbidly obese. (T at 276). He is 6' 1' tall and his weight fluctuated between 285 pounds and 375 pounds during the relevant time period. (T at 33, 127, 250-251, 276). The ALJ recognized the evidence of obesity, but found that it did not rise to the level of a separate, severe impairment. (T at 14). Nevertheless, the ALJ noted that the medical opinions all referenced Plaintiff's obesity and implicitly incorporated that condition into their findings. Thus, the ALJ indicated that he was considering Plaintiff's obesity by considering those opinions. (T at 14, 20).

Plaintiff contends the ALJ should have considered and discussed obesity as a separate, severe impairment. This Court finds this argument unavailing. The ALJ adequately addressed Plaintiff's obesity by discussing the condition in detail, considering medical opinions that referenced obesity, and expressly incorporating the condition into his findings. Given the absence of medical opinions identifying limitations arising directly and solely from obesity, the ALJ was not required to give the matter any further consideration. See Fox v. Astrue, No. 6:05-CV-1599, 2008 WL 828078, at *11 (N.D.N.Y. Mar.26, 2008) (finding that the ALJ sufficiently considered obesity where he discussed it in an "entire paragraph"); Cruz v. Barnhart, No. 04-CV-9011, 2006 WL 1228581, at *9-10 (S.D.N.Y. May 8, 2006) (reasoning that the ALJ sufficiently considered the Plaintiff's obesity when he

mentioned obesity in his factual findings).

Moreover, even if the ALJ should have concluded that Plaintiff's obesity was a severe impairment, Plaintiff has not shown how such consideration would have materially affected the ALJ's overall assessment of Plaintiff's residual functional capacity, as that assessment was based on medical opinions that already incorporated Plaintiff's obesity. See Hulbert v. Comm'r of Social Security, No. 06-CV-1099, 2009 WL 2823739, at *12 n.13 (N.D.N.Y. Aug. 31, 2009)("Moreover, even assuming arguendo that plaintiff's obesity severely limited her physical or mental ability to do basic work activities, there is nothing in the record to suggest that any such limitations would be distinguishable from those attributable to her diabetes, osteopenia or finger numbness, which the ALJ considered and found to be severe."); Guadalupe v. Barnhart, No. 04-CV-7644, 2005 WL 2033380, at *6 (S.D.N.Y. Aug. 24, 2005)("When an ALJ's decision adopts the physical limitations suggested by reviewing doctors after examining the Plaintiff, the claimant's obesity is understood to have been factored into their decisions.").

### ii. Fissuring

Dr. George Alexis Sirotenko, a consultative examiner, reported that a "skin exam [was] significant for fissuring involving all fingers and toes of both hands [*sic*]." (T at 251). The doctor opined that Plaintiff should avoid "caustic and irritating substances," which might exacerbate the fissuring. (T at 253). A December 2008 treatment note from Dr. H. Douglas Wilson noted "a remarkable degree of callusing" on Plaintiff's palms, with an even worse degree of callusing on his feet. (T at 284). The doctor reported Plaintiff's complaint that his hands "crack," causing infection and pain. (T at 284). Dr. Wilson provided creams and ointments and noted there was "little else" that could be done. (T at 284).

The ALJ concluded that Plaintiff's fissuring did not rise to the level of a severe impairment. Plaintiff argues that the ALJ should have concluded that the condition imposed more than a minimal limitation on his ability to perform basic work activities. However, although the condition is doubtless painful, there is no medical evidence that it imposes more than a minimal limitation with regard to Plaintiff's ability to perform basic work activities. "Basic work activities" are defined as "the abilities and aptitudes necessary to do most jobs," 20 CFR § 404.1521 (b)(1). Examples include "reaching, carrying, or handling." Id. Although the inability to contact caustic and irritating substances is a limitation, Plaintiff has not established that it relates to an ability or aptitude necessary to perform most jobs. As such, this Court finds no reversible error as to this aspect of the ALJ's decision.

### iii.    Harmless Error

In the alternative, even if the ALJ should have found that Plaintiff's obesity and/or fissuring were severe impairments, any error in this regard was harmless. The ALJ found other severe impairments, considered and specifically discussed both of the non-severe impairments, and completed the sequential analysis. This was sufficient under the circumstances. See Maziarz v. Secretary of Health & Human Services, 837 F.2d 240, 244 (6th Cir. 1987)("[T]he Secretary found that Maziarz suffered from the severe impairment of coronary artery disease, status post right coronary artery angioplasty and angina pectoris. Accordingly, the Secretary continued with the remaining steps in his disability determination. Since the Secretary properly could consider claimant's cervical condition in determining whether claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity, the Secretary's failure to find that claimant's cervical condition constituted a severe impairment could not constitute reversible error.");

McCartney v. Commissioner of Social Sec., Civil Action No. 07-1572, 2009 WL 1323578, at *16 (W.D.Pa. May 8, 2009)("Even if the Court was to find that the ALJ did err in excluding headaches from the list of severe impairments, any such error was harmless because the ALJ found other severe impairments at step two and proceeded through the sequential evaluation on the basis of Plaintiff's severe and non-severe impairments."); Portorreal v. Astrue, No. C.A. 07-296ML, 2008 WL 4681636, at *3 (D.R.I. Oct. 21, 2008).

### b.    Treating Physician

Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).[5]

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances.  In this regard, the ALJ should consider the following factors when determining the proper weight to afford the opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R. § 404.1527(d)(1)-(6); see also Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143

---

[5]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

F.3d 115, 118 (2d Cir.1998); Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998).

In March of 2010, Dr. Scott VanGorder, Plaintiff's treating physician completed a Medical Source Statement. He had treated Plaintiff every six months since September of 2008 and reported that Plaintiff experienced severe lower back pain, shortness of breath, and severe left leg pain. Dr. VanGorder opined that Plaintiff was limited in his walking ability, needed frequent changes in position, and could not lift more than twenty (20) pounds. (T at 312).

Dr. VanGorder assessed that Plaintiff could stand/walk for less than 2 hours in an 8-hour workday and sit for about 6 hours with frequent changes in position. He believed Plaintiff would need a job that permitted shifting positions at will from sitting to standing or walking. He indicated that Plaintiff would need to alternate positions for about 30 minutes before sitting again. (T at 312-13). Dr. VanGorder opined that Plaintiff would need to take brief, unscheduled breaks approximately every 15 minutes during the work day and could not perform any bending, squatting, crawling, climbing, repetitive pushing/pulling, twisting, crouching, balancing, or stooping. (T at 313). Dr. VanGorder found that Plaintiff could handle moderate stress or more, had a "guarded" prognosis, and was not a malingerer. (T at 314).

The ALJ recognized and recited the appropriate standard for reviewing a treating physician's opinion. After considering the evidence, he decided to afford "little evidentiary weight" to Dr. VanGorder's opinion. (T at 20). For the following reasons, this Court finds that the ALJ's assessment was consistent with applicable law and supported by substantial evidence.

First, the ALJ concluded that Dr. VanGorder's assessment of significant limitations

12

was inconsistent with the clinical evidence. This conclusion was supported by substantial evidence. Chest x-rays were mostly unremarkable. (T at 236 - "lungs are well aerated and show[ ] no evidence of acute process", 244 - "No discrete pulmonary opacities are identified."). Pulmonary function testing generally indicated moderate findings, with some improvement over time. (T at 243 - "moderate obstructive lung defect . . . [with] significant acute response to bronchodilator", T at 286-87 - "moderate obstructive lung defect" with improvement from prior testing noted). Lumbar and cervical x-rays likewise did not indicate severe concerns. (January 2006 cervical spine x-ray - T at 195 - "normal vertebral body height and alignment," "disc spaces are intact . . . facet joints are unremarkable ... no bone destruction .... prevertebral soft tissue reveal no abnormalities," "Straightening of the cervical curvature may be secondary to muscular spasm. Otherwise, the study is unremarkable." – October 2008 lumbrosacral spine x-ray- T at 254 -"mild degenerative spondylosis at L2-L3," "moderate straightening," "no compression fracture").

Second, the treatment notes and clinical findings are inconsistent with Dr. VanGorder's assessment and support the ALJ's decision to discount that opinion. (T at 276 - lungs "clear to auscultation bilateral", T at 277 - "things are much better . . . and seems to be doing well"- "can do sit down positions, but would need frequent change in position", T at 278 - "[d]istant breath sounds, but otherwise clear" - physical therapy "does help well" - "I would only place him at this point as a partial level of disability", T at 280 - lungs "show mild expiratory wheeze bilaterally with no rales and no rhonchi" - "able to flex, his torso okay and twist of his body okay", T at 282 - breathing "a bit better" with treatment, T at 352 - reporting improving knee pain, "moderate" back pain, T at 355 - leg "doing better," back described as "sore", T at 365 - low back pain, described as "a little sore", T at 367 - "My

back is ok because I stayed out of the woods over the weekend", T at 376 - "My back is not too bad today; didn't work in the woods over the weekend". T at 385 - back pain described as "much better").

Third, Plaintiff's reported activities were inconsistent with the severe limitations assessed by Dr. VanGorder. Plaintiff frequently reported performing vigorous activities such as log-splitting/wood-cutting (T at 278, 338, 362, 391), snow removal (T at 347), and hunting/hiking in the woods (T at 282, 335, 367, 373). The performance of these activities alone is certainly not dispositive of the question of disability (Plaintiff often reported experiencing pain after performing the activities). However, the fact that Plaintiff was able to engage in vigorous physical activity despite his pain and limitations forms a part of a larger body of evidence (discussed in this section) that ultimately constitutes substantial evidence supporting the ALJ's decision.

Fourth, the reports of the consultative examiner and State Agency medical review consultant support the ALJ's decision to discount Dr. VanGorder's assessment. Dr. George Alexis Sirotenko performed a consultative examination in October of 2008 and concluded that Plaintiff had moderate limitations with respect to stairs, inclines or ladders and operating foot pedals with his left foot. He opined that Plaintiff should avoid: activities "beyond a moderate degree of physical exertion," respiratory triggers that might aggravate his COPD, and caustic or irritating substances that might exacerbate the chronic fissuring of his hands and feet. (T at 253). On examination, Dr. Sirotenko noted no muscle atrophy, stable and non-tender joints, and full flexion and rotary movements bilaterally in both the cervical and lumbar spine. (T at 252). Plaintiff had full range of motion of the hips, knees, and right ankle. (T at 252).

Dr. DiBella, a non-examining State Agency medical review consultant, opined that Plaintiff could occasionally lift/carry 20 pounds, frequently lift/carry 10 pounds, and stand, walk, or sit for about 6 hours in an 8-hour workday. (T at 264). Dr. DiBella concluded that Plaintiff was limited to occasional climbing, balancing, stooping, kneeling, crouching, and crawling. (T at 253), Plaintiff needed to avoid concentrated exposure to extreme temperatures, humidity, and fumes/odors/dusts/gases/poor ventilation. (T at 266). Dr. DiBella found that Plaintiff could perform light work, with "asthma precautions," and adopted Dr. Sirotenko's opinion. (T at 267).

It is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. See 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2); see also Leach ex. Rel. Murray v. Barnhart, No. 02 Civ. 3561, 2004 WL 99935, at 9 (S.D.N.Y. Jan.22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").

Such reliance is particularly appropriate where, as here, the opinions of these examining and non-examining State agency medical consultants are supported by the weight of the evidence. See Brunson v. Barnhart, 01-CV-1829, 2002 WL 393078, at *14 (E.D.N.Y. Mar. 14, 2002) (holding that opinions of non-examining sources may be considered where they are supported by evidence in the record).

For the foregoing reasons, this Court finds that the ALJ's assessment of the treating physician's opinion was in accord with applicable law and supported by substantial

evidence.

### c.    Credibility

A claimant's subjective complaints are an important element in disability claims, and must be thoroughly considered. <u>See</u> <u>See</u> <u>Ber v. Celebrezze</u>, 332 F.2d 293, 298, 300 (2d Cir.1964). Further, if claimant's testimony regarding pain and limitations is rejected or discounted, the ALJ must be explicit in the reasons for rejecting the testimony. <u>See</u> <u>Brandon v. Bowen</u>, 666 F. Supp. 604, 609 (S.D.N.Y.1997).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. <u>See</u> 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; <u>Gernavage v. Shalala</u>, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." <u>Lewis v. Apfel</u>, 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted).

To this end, the ALJ must follow a two-step process to evaluate the plaintiff's contention of pain, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....
>
> Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to

determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the plaintiff's pain contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a determination regarding the plaintiff's credibility:

1. [Plaintiff's] daily activities;
2. The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;
3. Precipitating and aggravating factors;
4. The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
5. Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;
6. Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;
7. Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the plaintiff's pain contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." <u>Young v. Astrue</u>, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting <u>Brandon v. Bowen</u>, 666 F. Supp 604, 608 (S.D.N.Y.1987)).

In this case, Plaintiff testified as follows: He is 6' 1" and weighs 375 pounds. (T at 33). He lives in a camper on property owned by his parents. (T at 33). He worked as a union millwright carpenter for 20 years. (T at 34-35). His hands and feet are covered in painful calluses. (T at 41, 43). He becomes very short-winded because of his COPD and obesity, which makes him "very limited in what I can accomplish." (T at 46). Rest periods

are required after any exertion. (T at 46). He experiences extreme pain in his back, knees, and legs. (T at 47-48). Sitting requires constant adjusting of position. (T at 48-49). He has loss of mobility, swelling, and pain in his left leg due to a work-related injury. (T at 49-50). His numerous medications cause fatigue. (T at 53). Walking causes extreme back pain and a total loss of breath. (T at 55). He could probably pick up 25-30 pounds. (T at 62). His back pain makes bending or squatting very difficult. (T at 62).

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce Plaintiff's pain and other symptoms, but that his statements concerning the intensity, persistence, and limiting effects of the impairments were not fully credible. (T at 16). The ALJ discounted Plaintiff's credibility, in part, because Plaintiff had a criminal record and poor earnings history. (T at 16). Plaintiff takes issue with the ALJ's reference to his criminal record and earnings history. This Court finds no error in the ALJ's decision to discount Plaintiff's credibility based on his undisputed criminal record (T at 237-40, 250). Plaintiff has not provided any authority to suggest that such consideration was improper.

Concerning his "poor" earnings record, Plaintiff notes his extensive history working as a union millwright carpenter. (T at 123-26). The Commissioner defends the ALJ's decision by pointing out that Plaintiff showed no (or very little earnings) for several years prior to the alleged onset of disability. (T at 124). This Court is inclined toward the view that the ALJ's characterization of Plaintiff's earning record as "very poor" is not supported by substantial evidence. When considered in its entirety, Plaintiff's earning record tends to support (rather than undermine) his credibility.

However, the ALJ's decision to discount Plaintiff's credibility was not based primarily

on his view of the earnings records and any error in this regard was harmless. Sufficient evidence exists in the record to support the ALJ's credibility determination and RFC assessment. Specifically, as outlined above, the ALJ's findings were supported by the clinical evidence, testing results, treatment notes, Plaintiff's activities, and the opinions provided by the consultative examiner and State Agency review consultant.

"It is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." <u>Carroll v. Secretary of Health and Human Servs.</u>, 705 F.2d 638, 642 (2d Cir.1983) (citations omitted). If there is substantial evidence in the record to support the Commissioner's findings, "the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain." <u>Aponte v. Sec'y, Dep't of Health & Human Servs</u>, 728 F.2d 588, 591 (2d Cir.1984) (citations omitted). Further, the ALJ has the benefit of directly observing a claimant's demeanor and other indicia of credibility, which thus entitles the ALJ's credibility assessment to deference. <u>See</u> <u>Tejada v. Apfel</u>, 167 F.3d 770, 776 (2d Cir.1999) (citing <u>Pascariello v. Heckler</u>, 621 F. Supp. 1032, 1036 (S.D.N.Y.1985)); <u>see</u> <u>also</u> <u>Snell v. Apfel</u>, 177 F.3d 128, 135 (2d Cir.1999).

There is no question that Plaintiff lives with pain, as the record documents frequent complaints in that regard. However, "disability requires more than mere inability to work without pain. To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment. Otherwise, eligibility for disability benefits would take on new meaning." <u>Dumas v. Schweiker</u>, 712 F.2d 1545, 1552 (2d Cir. 1983). Moreover, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence [of disability]." 42 U.S.C. § 423(d)(5)(A).

This Court finds that the ALJ properly exercised his discretion to evaluate the credibility of Plaintiff's testimony and rendered an independent judgment regarding the extent of Plaintiff's subjective complaints based on the objective medical and other evidence. See e.g. Mimms v. Sec'y of Health and Human Servs., 750 F.2d 180, 196 (2d Cir.1984). The ALJ's decision should therefore be upheld.

### d. Step Five Analysis

At step 5 in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering his physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). The second part of this process is generally satisfied by referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"). See Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir.1986).

The function of the Grids was succinctly summarized by the court in Zorilla v. Chater, 915 F. Supp. 662, 667 (S.D.N.Y.1996) as follows:

> In meeting [his] burden of proof on the fifth step of the sequential evaluation process described above, the Commissioner, under appropriate circumstances, may rely on the medical-vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grid." The Grid takes into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience. Based on these factors, the Grid indicates whether the claimant can engage in any other substantial gainful work which exists in the national economy. Generally the result listed in the Grid is dispositive on the issue of disability.

Id.

"The Grid classifies work into five categories based on the exertional requirements of the different jobs. Specifically, it divides work into sedentary, light, medium, heavy and very heavy, based on the extent of requirements in the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, and pulling." Id. at 667 n. 2; see 20 C.F.R. § 404.1567(a). Upon consideration of the claimant's residual functional capacity, age, education, and prior work experience, the Grid yields a decision of "disabled" or "not disabled." 20 C.F.R. § 404.1569, § 404 Subpt. P, App. 2, 200.00(a).

If a claimant's work capacity is significantly diminished by non-exertional impairments beyond that caused by his or her exertional impairment(s), then the use of the Grids may be an inappropriate method of affirming a claimant's residual functional capacity and the ALJ may be required to consult a vocational expert. See Pratts v. Chater, 94 F.3d 34, 39 (2d Cir.1996); Bapp v. Bowen, 802 F.2d 601, 604-605 (2d Cir.1986).

In this case, the ALJ noted that a finding of "not disabled" would be directed by Medical-Vocational Rule 202.21 if Plaintiff retained the RFC to perform the full range of light work. (T at 21). The ALJ noted Plaintiff's non-exertional limitations, but found that these limitations did not significant degrade the base of work requiring light exertion. (T at 21-22). Thus, the ALJ made a finding of "not disabled" under the framework of Rule 202.21. (T at 22).

Plaintiff challenges the application of the Grids, by essentially re-asserting his challenge to the ALJ's consideration of Dr. VanGorder's opinion. However, the ALJ's RFC determination and application of the Grids were supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v.

Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). As discussed in detail above, as outlined above, the ALJ's findings were consistent with the clinical evidence, testing results, treatment notes, Plaintiff's activities, and the opinions provided by the consultative examiner and State Agency review consultant. Accordingly, this Court finds no reversible error with respect to this aspect of the ALJ's decision.

## IV. CONCLUSION

After reviewing the administrative record, this Court finds substantial evidence supports the Commissioner's decision, including the objective medical evidence and supported medical opinions. The ALJ examined the record, afforded appropriate weight to the medical evidence, including the assessments of Plaintiff's treating providers and the consultative examiners, and afforded the subjective claims of symptoms and limitations an appropriate weight when rendering his decision that Plaintiff is not disabled. In sum, this Court finds no reversible error and because substantial evidence supports the Commissioner's decision, this Court recommends that the Commissioner be GRANTED judgment on the pleadings and that Plaintiff's motion for judgment on the pleadings be DENIED.

Respectfully submitted,

Dated:   June 4, 2013

      Syracuse, New York

                                       Victor E. Bianchini
                                       United States Magistrate Judge

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See <u>Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co.</u>, 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

Victor E. Bianchini
United States Magistrate Judge

Dated:   June 4, 2013

Syracuse, New York